sir. We are now reporting. Hear ye, hear you. This honorable appellate court for the Second Judicial District is now in session. The Honorable Robert D. McLaren presiding. Your Honor, the first case on the docket this afternoon is 2-21-0715. The people of the state of Illinois, Plaintiff Appali, the Casey Hagestedt, Mr. Andrew T. Moore, arguing for the Appali, Ms. Amy M. Watroba. Thank you. Mr. Moore, you may proceed. Thank you, Your Honors, and may it please the court. My name is Andrew Moore, and I'm here on behalf of my client Casey Hagestedt, who is joining us on the call today. The United States Supreme Court has held that all details within one's home are considered intimate details because the entire area is held safe from prying government eyes. Mr. Moore, you concede, and the defense counsel conceded in a trial court, that Officer Leibich was in a place where he had a right to be under the emergency or slash caretaking exception to the warrant requirement, correct? If he entered the home under that, I'm not sure what defense counsel conceded at oral argument on the motion that Officer Leibich had a right to go into the kitchen to check on the stove. He had a right to go into the kitchen, but that doesn't give him the right to do whatever he wants within that kitchen. He has to stay within the scope of his authorization to be there. What case law supports that position? Well, the people versus McCrute. McCrute was different. McCrute, in that case, the officers had already restrained the defendant. He was in the living room sitting on a couch. Two uniformed police officers, armed police officers, were with him, yet the other officer followed the female, the woman, into the bedroom to get her clothes, and that's when the observation was made that led to the seizure, correct? Correct. So that exceeded the scope of their authorization within the house, just as searching this cabinet exceeded that within the... The United States Supreme Court has made clear that the, you know, the circumscribed level of inspection that they talked about in Mincy versus Oklahoma, or Mincy versus... I'm trying to find my notes here. In Mincy versus Arizona, the court said the language strictly circumscribed by the exigencies which justified the initiation was addressing only the scope of the primary search itself and not overruling by implication many cases acknowledging the Plainview Doctrine can legitimate actions beyond that scope. So the Supreme Court has made clear so long as police officers in a place where he's entitled to be, he can use the Plainview. He can look into areas that are open to inspection. Well, let's talk about if he was in a place where he was legally allowed to be when he looked into the cabinet. I'll concede that he was in a place where he was legally allowed to be when he saw the locked cabinet, the padlock, which, you know, is also a clear expression of a state of privacy interest. But approaching that cabinet, doing the steps that were needed to look into that cabinet was outside of the scope of his legal reasons to be in the house, therefore... Again, again, you are ignoring my question. The Supreme Court's made clear and appellate courts in Illinois, our Supreme Court has made clear that if a police officer is in a position where he has a legal right to be, he can make observations. He's not required to put blinders on or shut down his senses or his ability to observe things. And the court made clear that the use of a flashlight is not a search. It's not an intrusion. It's an observation, not a search. And the trial court credited Officer Leavage's testimony and asked pointedly, do you have any case law for the authority that use of a flashlight is a search? And counsel conceded, no, he did not have any case law. He merely argued, quote unquote, the totality of the circumstances. I disagree with your assertion that I'm ignoring the case law. I'm actually applying it here. What case law? Again, let me ask you, what case law says that a police officer cannot use his senses of observation when the emergency or whatever puts him in that position has elapsed? Your honor, if I can finish what I'm saying here, um, the officer, the officers only legally allowed to be in the house under the community caretaking rules. If he's furthering that he can't go in and conduct a investigation when the officer chose to abandon that objective and to investigate the contents of a cabinet that was leaving the scope of his community caretaking doctor. He didn't have to avert his eyes. He had to actively seek out what was in this cabinet. This wasn't something that was on the table that was out in the open. This was something that was within a cabinet with a extremely minor structural flaw that allowed him to view inside with effort and going to the use of the flashlight. What effort? What effort? You said using effort. What effort? Well, he had to position himself in a way where he could look into a one inch gap into this cabinet, which is on the lower part of the cabinet. So he would have to bend over pure into this cabinet. And also the use of a flashlight doesn't per se, like impute the fourth. Would you agree that the locked cabinet, how many padlocked cabinets with a chain and a padlock have you seen in your lifetime in a kitchen? The level of suspicion has no bearing on. Well, no, the council agreed and said that his attention was drawn to it because it was rather unique. It was closed and locked. It doesn't matter if that's what drew his attention. It doesn't matter. Could a normal private citizen who was in that kitchen have looked into the cabinet in the same way? For example, a guest in the home. Under the fourth amendment, he could because he's not a government actor. That's the whole purpose of the plain view exception. If you're in a position where another citizen could be or a guest in a home to make an observation, it's not a violation. That's incorrect because he has to be in a place where he's legally allowed to be. He's not legally allowed to be there once he decided to look into that cabinet. Where he was legally allowed to be was when he turned around and he saw the lock. That was where he was legally allowed to be. When he approached that cabinet, when he took all the steps to look into that cabinet, that took him out of his role. During this ongoing investigation, he testified that it still smelled strongly of gas in the house. His partner is in the room trying to get the defendant out of the house because paramedics had stated that it's a risk for him to be there. My question is this. It's simple. What case law do you have for that position that the officer can't use his flashlight to look just like a police officer who's in a bedroom and sees a partially open closet? Case law allows him to use the flashlight to look in that closet even though it's not related to the scope of or the reason for his being present. I'm not focused on specifically the flashlight. His use of the flashlight evidences that he wasn't concerned about the community caretaking role that he's supposed to be keeping. That argument was not made at the trial level. Counsel focused on the flashlight. He said the flashlight was the problem here. Your Honor, I'm not bound by what was argued below. I don't have to argue exactly what was argued below. If you want to talk about closets... You're asking us to reverse and you're relying on argument that was not made below. What argument would that be? That the officer has abandoned the quote-unquote scope of why he was there. I'm not bound by the exact arguments made below and neither is this court. You can decide this de novo. It's applying the law so then the review is de novo. You're not bound by what happened below. Counsel, let's add another fact if I may, Justice Burkett. First of all, Mr. Moore, your picture is no longer there but that's... I guess if your camera doesn't allow it, that's fine. There we go. I'm sorry. It keeps turning out for some reason. Okay. In this kitchen, another fact that makes this locked cabinet rather interesting is a... Oh, we'll call it a nest camera or some sort of a camera on top of the refrigerator that's looking directly at that cabinet or aimed directly at that cabinet. Why is the officer not allowed to be curious about what that is? Not speculation but just this is a locked cabinet in a kitchen and there's a camera looking directly at it. Why should he not take a pause and look in that cabinet? First to address that, Officer Leibich never testified that he saw any of that. That was Officer Stanish who arrived second. All of this comes down to what Leibich did, what Leibich saw. He never testified that he saw that when he entered the kitchen. But Stanish is the one who looked in but Stanish, he didn't look in until after he physically opened the cabinet which as ruled below was clearly a search because there was a physical intrusion. So his observations don't mean anything right now. Let me ask you this. Would you agree that under the plain view exception and really it's not an exception, it's not really a search. That's what the Supreme Court has said. Would you agree that the officer's motives are irrelevant to the plain view exception so long as the officer's in a place where he has a right to be and the incriminating nature or contraband nature of the material is evident? I don't think that the officer's intent is dispositive but it's certainly informative. Well the Supreme Court has said it's irrelevant. It's an objective. We look at objectively from is an officer in a place where he has a right to be and is it immediately apparent that the item seized is either contraband or incriminating evidence? And the answer to those questions is no he was legally able to be. You're saying he was not legally able to be even though his original entry and his presence in the kitchen was justified? Correct. Just as in Mercoud. He was authorized to enter the house. The officer was not authorized to be in the bedroom. Neither was this officer authorized to be in a position where he's looking into this cabinet. It's the same. I mean Mercoud he entered a different room but ultimately it's the same analysis. What has to happen in order to effectuate your warrantless entry into the home? That court held that he didn't have to go into that room. Even though you know he's technically he could say he's protecting the woman that who was getting her belongings. That was what was he should have used the least intrusive which would be to stay with the defendant. But could the court also said if he had and I haven't read it in a while but the court also said if there was a legitimate basis to be in there he could have used he could have looked. Correct because the closet door was wide open. Right just like this officer looked in the closet in the cabinet. And his steps that he had to take in order to look into that cabinet took him out of the community caretaking role and therefore he was no longer it's the case law says once the community once you abandon or complete your community caretaking roles you have to exit the house immediately. The trial court said that officer Liebich's observation um was authorized that there was a legitimate observation correct? The trial court did say that yes. So that obviously that's your point is that's a legal issue for us to review the that finding as it relates to um whether or not the fourth amendment permitted the officer to do that Yes. I mean it's not a factual finding it's a analysis of well it's it's both it's mixed but you're correct ultimately are reduced in oval. But the court said and asked counsel pointedly why is the use of the flashlight why does it vitiate plain view? Yeah and there is case law that says the use of a flashlight doesn't in and of itself violate plain view but it's evidence here he didn't need the flat here he didn't let me again let me ask you this it's not clear from the record whether or not he first used the flashlight or if he looked first and saw what he thought to be cannabis and then confirmed it with the flashlight. It is it's can it's in the record um I don't have the page number but he testifies that he had to he initiated using his flashlight in order to look into the cabinet. Okay okay and so what if he hadn't used the flashlight and he just saw the cannabis right away? Still I would point to um I it still would in this exact scenario it would still be a search because he why from where looking using your eyesight is never a search if you're in a again I'm saying I'm arguing he's not and once he decides to take any action that's not in pursuit of his community caretaking roles he's no longer a community caretaker. So because of that I see my time's up if you all have any other questions I can address them now or we can wait till the. Have you read Hicks? Oh what was that? Have you read Hicks? Yeah. What do you think its interpretation would be insofar as applying the law to the facts in this case? Hicks was a little bit different if I'm you know correct me if I'm wrong this is the using a flashlight to look into a vehicle case? No no no. What what are the basic facts of Hicks? This is the stolen equipment stolen stereo equipment. Oh the stereo equipment case and what was the question again? The officers looked at what they thought to be suspicious stereo equipment and on one item they could see the serial numbers but but then they went further and moved objects to to view and record other serial numbers that was the crux of it but the initial emergency that drew the police officers to the to the that residence was there had been a shooting and so they had already eliminated the issue of safety and recovering firearms and then they went on to start inspecting the stereo equipment they suspected might have been stolen. Right yeah sorry I mixed the two cases up but that analysis it it would still be an illegal search because they're the what they viewed was actually in plain view I think that that's really what gets forgotten about these plain view cases is plain view isn't you can view it regardless of what you have to do to view it these serial numbers were right out in the open so there's no reasonable expectation of privacy over those we're here Casey has put a very clear private like display of a privacy expectation so if if those if there was some effort made to block those serial numbers it would it would have been a search but they were right out in the open so therefore it was not a search. Justice McLaren I have another question if I might. You may. Mr. Moore where where was why was the search warrant not attached or where is this search warrant? I don't know exactly there was an issue with the motion below as far as not the the original motion didn't make arguments based on the search warrant so typically we only get things that were evidence at trial so. But it it's apparent that the search warrant was not attached to anything which would be standard operating procedure under most circumstances since it's a defendant's burden correct? Correct. And so how do we treat the fact that the warrant isn't there do we just say oh it's not there or do we say there's there may be a reason it's not there and it it affects this privacy issue? I think that to address that issue I think the the testimony was clear as to the basis for that warrant was and it was a second entry into the home where they allegedly all of a sudden could smell a strong smell of marijuana after a gas leak but there was no justification for that second entry so the the warrant would not be. Really everything comes down to Liebich because his his observations filtered to Stanisch and then Stanisch's second entry of the home which was not justified under any exigent circumstance. Well Judge the trial court made a comment about the search warrant both at his original ruling as well as the ruling on a motion to reconsider without the search warrant I can't determine whether or not there was an independent basis for the search and without the search warrant how do we know? That's what the court said. Well we have testimony as to what was in that search. Well you have partial testimony that it was Liebich's observations but there's obviously other evidence that could have been in that search warrant which we don't know for example the defendant's criminal history the defendant was and I know he's on this call he was addicted and you you talk about privacy issues his that it may well have been to lock cabinet to protect his stash from from other people not a privacy interest but just like a person who locks up his or her alcohol to keep her from kids so there's a lot that could be in that warrant that we don't know about. Well to address the privacy comment it doesn't matter what is in a container it's the protected if you right but I guess to address your questions there's not any the state hasn't put forth anything to show that the there was anything in that warrant outside of the testimony so I'm relying on the testimony as to what the officers did which was they got outside of the lead detective who calls the state's attorney and they try to devise a plan as to get a warrant to cover up for their mistakes. Well that brings me to another question and it briefly if I can judge judge McLaren you you know kind of demeaning language you for example you say at page three of your reply brief it will take some time to deconstruct the hypocritical argument in response what did you mean by that? Well the state the state frequently goes back when justifying Leibich's presence that he was concerned about my client Casey's safety but that is hypocritical because his actions within the house show that he cared nothing about my client's safety he was in the house for perhaps less than a minute before he started searching through his kitchen cabinets. You've never met officer Leibich have you or officer Stanish? No I haven't. Would you would you agree that police officers are trained to observe to listen to be cautious to be curious and that obviously they're also trained to stay within the confines of the fourth amendment and they were not trying to cover anything up they were told they should probably get a search warrant because of the locked nature that's not trying to cover anything up and I'll just I'll leave you with this personal attacks do not personally attack opposing counsel attack only their arguments stay above the fray attacking opposing counsel will result in a judge questioning the advocate's judgment and the same discerning eye to the state's briefs as well. That's just a that's just a lesson learned of course we do. Do did you have a question? No I have no other questions. Thank you Mr. Moore you'll have an opportunity to make rebuttal thank you. Ms. Watroba you may proceed. Thank you your I work for the DuPage County State Attorney's Office and I'm representing the people today. I believe I'll I'll start where Justice McLaren left off which is the question of how would Arizona versus how would this case be viewed in light of Arizona versus Hicks and I disagree with opposing counsel. I think Arizona versus Hicks supports the trial court's conclusion in this case. In Hicks the officers entered an apartment after there had been a shooting of some sort and they were there investigating that and also checking to see if other people were okay and while they were there they noticed expensive stereo equipment that seemed out of place based on the the the way the apartment appeared and they went closer to that stereo equipment they recorded serial numbers and they had to move the equipment to do so. So here's where the but here's what's really important it obviously differs somewhat factually because nothing was moved here in finding and discussing plain view and what was permitted under plain view and what was not the court made several important observations. They said first the initial observations of the quote-unquote suspicious stereo equipment were okay those are in plain view as Justice Burkett noted officers are allowed to use their senses to note things and see things and smell things and hear things. They also noted that approaching that equipment and recording the serial numbers would have also been okay under the plain view doctrine. Where the problem came in was when where they manipulated and moved the stereo equipment to get certain to get certain additional information. So based on that case law what happened here what officer Liebig did is akin to making an observation and then viewing. I will agree that the the the record is a bit unclear as to the exact timing and order of of whether he observed the where he was standing in the kitchen when he first observed the lock other than he had turned from the stove. It's unclear if he was in a position where he could already see the gap from that point. It's also slightly unclear he did say he immediately when he looked in the cabinet could see that it was cannabis. It is a little unclear whether the flashlight went up simultaneously with his initial observation or if he made the observation and then confirmed with the flashlight. What is clear is that when he looked in the the gap in the cabinet what was readily viewable to anyone in that kitchen he knew immediately that it was cannabis. I'm sorry ma'am you said that when he flashed the flashlight into the space it was visible or it was apparent to anyone in that room that there was cannabis in there. I should clarify that anyone anyone well certainly a police officer who has anyone who had positioned himself or herself in that position would have seen that there was cannabis in there. That is true and again the record is unclear there's nothing to support the defense argument that there was a manipulation of movement within the kitchen to somehow exploit a gap. I do want to make that clear but I think under Arizona versus Hicks even giving the benefit of the doubt that perhaps he would have had to step to the side a little bit he could see that there was a gap under Arizona versus Hicks that would be okay because that's plain view. The Texas versus Texas versus Brown also stands for the proposition that a police officer moving or shifting his position to get a better view of the inside of a glove compartment being searched by the driver for his driver's license does not render it a search. Bending down and looking at an angle is irrelevant to the fourth amendment. That is correct and Texas versus Brown further also involved a flashlight and also reaffirmed the holding that using a flashlight to illuminate an area does not transform the officer's actions into a search under the um they like. So we know those facts are factors from Hicks and from Texas versus Brown. Why was the officer still in the kitchen at that point when he determined that there was no damage as a result of the stove? The stove was off the danger had basically cleared. He was in the process of leaving the kitchen your honor so he had the way he described it is he had checked the stove then he turned to leave the kitchen and that is when he made his plain view observations. So that's when he made his plain view observation of the padlock cabinet. It's not it it's not entirely clear whether he just saw the padlock or he also could see inside at that point but again under either scenario um plain view would apply um under Hicks and Texas um but I think what's is lawfully in a place in in a residence for example and he makes a plain view observation. His purpose for being his lawful purpose for being in that place doesn't automatically cease. So um I believe it was in um again in Arizona versus Hicks which the court noted that the lack of relationship between a reason for an entry into the location and um the nature of the plain view observation is always going to exist. That's that's the nature of plain view. So the community caretaking or the emergency aid the reason why the officers were lawfully in the apartment didn't suddenly cease when he saw what he saw in plain view. Was he looking for a gas leak in the cabinet? No he was walking out of the kitchen. Okay as a police you know you said something that could be interpreted two different ways and that is you said something to the effect that when he looked into the cabinet he saw cannabis but it would seem that uh you didn't mention whether or not when he looked into the cabinet he turned the flashlight on uh or whether he looked in the cabinet couldn't see inside the cabinet took his flashlight out and shined it in and then saw the cannabis. And again I the record is a little less than clear on the exact order of things other than he said when he looked at the gap in the cabinet he immediately saw cannabis and for fourth for the purpose of plain view based on the case law related to the flashlight I submit that there is no distinction whether he let me ask you this if if this court were to determine that Officer Leibich actually conducted a non-lawful search when he looked into that cabinet wouldn't the state be entitled to argue good faith based upon based upon the case law and the case law in Illinois in particular Pittman for example an officer conducting a sweep for eviction looking into a bag or using his flashlight to confirm what he saw those those cases would the state request if in the event that we rule against you a remand for a good faith argument? Yes judge in our brief we did note that the state would if this court were to find an unreasonable search under the fourth amendment took place that remand not reversal would be appropriate for a number of reasons one the good faith exception is something we could possibly argue we do not know the contents of the search warrant based on this record so there's a possible independent probable cause there could be an attenuation argument so when when the state is when the defendant is unsuccessful obviously on a motion to suppress it never moves to that next step had the state lost on the motion to suppress then we would have moved on to make whatever arguments requested whatever type of additional hearing we felt was necessary to make all of the legal arguments that we could make that could then that could lead to a ruling that despite the fourth amendment violation suppression was not after the trial court denied the original motion for directed finding I don't know judge I the two officers that were present I mean what was at issue it was very clear that the the issue in the motion filed by the defense was a narrow one and it was limited to the to the viewing of what was in the cabinet by officer Liebich so those were the two witnesses that could speak to that because they were the ones that were obviously Liebich was alone in the kitchen but then Stanishe confirmed his observations as far as the timing of it and then obviously once officer Liebich made that observation then there was probable cause at that point so and the officers acted in the way that we would want officers to act in the way that case law says that they should act when they make an observation under certain circumstances then the appropriate thing to do is to go and get a search warrant before cutting open a padlocked cabinet I would submit to that the defendants focus on the the manner in which or the what the defendant may or may not have done to conceal items that's not relevant to a plain view analysis what's relevant is what can be seen so there was this was an open cabinet there it was a jar it could be viewed by anyone in that kitchen who could see the gap so that doesn't could I interrupt because of course you've answered the question you said that probable cause was determined when Liebich saw the marijuana correct yes yes now did he see the marijuana when he turned around and spied the padlock and Shane on the cabinet again judge I don't know based on the record if he saw the lock and the gap at the same time but when he saw when he saw the cannabis in the open cabinet and he recognized cannabis based on his experience as a police officer when you say open are you referring to the legal term open like in plain view are you referring to open as in a fissure or gap in the cabinet I'm referring to the fact that the cabinet was a jar okay my my question was when the officer focused his attention on the cabinet did he know that there was contraband in it well I if I don't know if he saw why would he go and position himself and why would he use a flashlight if he had seen cannabis previously well he may have done it to confirm it just like if I if he saw cannabis from a distance and he walked closer to it um it's those were those were the facts in Pittman a first district case a police officer doing a sweep sees what he thinks is cannabis and then he confirms it with a flashlight but here that's unclear yes and I again I'm not I'm not trying to play fast and loose with the facts I'm trying to be um you know clear about the fact that it's it I I wish and obviously with all fourth amendment cases that you could break it down moment by moment um be as to you know what what the officer did um but that's that's not entirely clear but he does say that he when he saw that what the portion of the cabinet that was a jar he immediately um recognized what he saw inside that gap in the cabinet as cannabis based on his experience he also testified he saw syringes as well correct um I don't recall if Liebich saw syringes they were in Spanish you probably are correct um so did the state admit into evidence the search warrant no they did not is that the reason why maybe I'm asking for conjecture on your side but it would seem to me that normal practices would indicate that the search would have been put into evidence by the state um I don't necessarily think that would be true based on the limited nature of the motion I believe there's discussion a number of times in the record um about the fact that if there was going to be a testimony or a challenge to the search warrant that that would have been that the defense would bring that in a separate motion that's actually I think the article 114 says it can only be one motion unless there's some change in circumstances or a change in effects correct it does say there can be only one motion based on the same facts but I think what it seemed to be what the discussion between the court and the parties was was that the if you're going to we don't have we're not we don't have the benefit of that to establish whether or not the search warrant should have been brought up as part of of the motion but again under the statute under 114-12 it is the defendant's motion it is his initial burden to establish that a search occurred and obviously the state's position in the court's finding was that no search even occurred in this case so based on the on the plain view doctrine if we determined that the search by Liebich was improper does the search warrant fall or does it withstand uh scrutiny on the basis that there was other evidence other than the fruits of the poisonous tree I think we would have to go I think it would have to be remanded to the trial court because we don't know what is included in the search warrant if the search warrant was based solely on officer Liebich's observations plain view observations or if in addition there were there's a notation about there being an odor of cannabis once some of the gas fumes started to be cleared out it's not clear whether that was included in the warrant and also I believe at some point the defendant may have admitted to having cannabis so I would say that if there was a determination that the fourth amendment was violated by officer Liebich's looking at into the open portion of the cabinet that remand for further proceedings would be the appropriate remedy and I see that my time is up I'm happy to answer any additional questions any other questions no no thank you thank you thank you Mr. Moore you may proceed with rebuttal um just just quickly um addressing Miss Wontrova's last comments regarding Casey admitting that he had cannabis that as far as I'm concerned as far as I know is nowhere in the record um trial counsel tried to start talking about um Casey's arrest which ultimately would have led to whether or not he made any statements but the judge precluded that questioning because the state objected to it so that was never we well we we have the transcript of his of his plea or the stipulated bench trial and I believe that was included and when we're looking at the record um and affirming a trial court we can look at the entire record including trial record so that's in the but then I stand corrected um but to counter the argument that there was no evidence that the officer had to get into a distorted position or view to look into the cabinet just I asked this court to just look at defense defendants exhibits one and two um and you can see that there's just a minor gap left by a bad hinge on the bottom left of the cabinet um there's obviously the the front facing view you can't see into the cabinet um but looking at those pictures it's pretty clear that he would have to bend over and get into a side angle and use his flashlight to look into this cabinet well how do you respond to the citation of texas versus brown that a police officer can shift his position bend down and and move in order to be able to see into an area and that in that case was a vehicle but to look into and see what was in the glove compartment while the suspect was rifling through it to find his driver's license there like like you said uh it was a car not everything that applies to cars applies to one's home which has the highest level of privacy interests but also the officer could have moved for other reasons such as officer safety to make sure the person isn't trying to obtain a gun and he sees something in play view during that but that same level of you know other options of what the officer could possibly be doing or not present in this case the court the courts the supreme court said that bending and moving um in order to get a better angle was irrelevant for fourth amendment analysis i i would have to look at that place case a little bit closer but i can't imagine that that is true in every situation specifically in a house looking into a locked cabinet when you're not even investigating a crime when you're supposed to be tending to the safety of my client and regarding his use of a flashlight it is clear in the record that he did have to use his flashlight to look in on page 81 that says the question is did you use your flashlight in order to look inside the cabinet answer yes i did so that that's pretty pretty clear on the record and as far as a good faith argument the there's absolutely no evidence that the officers had any good faith in fact there's evidence otherwise considering he initiated this investigation mr mr moore again it's an objective analysis the subjective intent or motives of the officers are irrelevant i was under the impression that you stated that this could be excused through good faith good faith is good faith is an argument that's made based on objective circumstances as well and i'm getting to this i'm getting to the objective circumstances which is within a minute or two of entering this house he's initiated a criminal investigation not only that but the officer who was tending to my client's safety which is the reason why they were there he called him away from that responsibility in order to deal with this low-level drug offense which objectively shows bad faith that he wasn't there to help my client he was there in order to look inside of his locked cabinets can we let me ask you this do we know from this record whether or not the police officers ran a criminal history check on the defendant before they entered the home do we know we don't know but that should not factor into whether or not they can work this cabinet you're making it sound like that they walked into this house not to check on the safety of your client but to find some criminal activity where is that indicated in the record i i was just arguing that based on officer leibovich's actions he was in in the least he was very easily distracted from his community caretaking responsibilities by a locked cabinet by his own testimony perhaps within a minute of entering the house you can't both can't both objectives be taking place at the same time not caretaking while also noticing which in fact is what happened because while stanish did leave the defendant for a time he went back into the bedroom and talked to the defendant again and finally talked him out talked him into coming out of the house right there's case law that says that community caretaking cannot be initiated to initiate a criminal investigation so in what case what case says that i can i can submit a supplemental brief my time's up i don't have it on the top of my head if you would like me to but just addressing another community caretaking i i get your point trying to make up or manufacture a community caretaking uh situation as a ruse to conduct a criminal investigation would violate the fourth amendment is that your point um my overall point is the fourth amendment was violated when this officer decided to initiate a criminal investigation while he was in a community caretaking role if he turned mr moore if he turned around and saw a dead body or a hand out of that cabinet should he just walk out of that kitchen that i'm what you're saying that is what you're saying no if he saw something hanging out of the cabinet that would be in plain view this what is inside of the cabinet is not in plain view he's exerted a reasonable expectation of privacy over the contents of this cabinet and that shouldn't be defeated by a minor structural flaw in that cabinet there's more than 80 years of jurisprudence from the united states supreme court and virtually every state in this country that says the use of a flashlight does not negate plain view and looking into an area where and you you conceded that somebody who was a guest in a home could have looked in there that's what police officers have a responsibility to do with and or can uh take that on themselves i don't think that mr moore said what you just said i think what he said was that if a guest looked in it wouldn't be state action and that therefore it would not be a search i don't think he said that uh mr gangstead or haggistead would have given consent for a guest to look inside or to break the chain in order to see what was inside that's a very concise and accurate recitation of my my view a police officer in terms of making a plain view observation stands in the shoes of a private citizen or a guest in the home um well in that case if a guest in the home tried to look into a clearly locked cabinet i would imagine that the homeowner would take umbrage with that similarly he's exerted a reasonable expectation of privacy that says stay out of this cabinet and the police are required to honor that and this wasn't an open cabinet it wasn't a jar as the state has claimed in this argument this cabinet was only open an inch or less on his testimony it's not um so what if we let's take this example police officers go to a home they walk up they're there because there's a report of some misbehavior um and the curtains are drawn they knock on the door no one answers the door and then they look on the side with their flashlight through an opening where the curtain is drawn and they notice contraband marijuana or whatever is that an off would that be a violation of plain view would that be a search from what you've said i would say no because the officers were there in order to investigate they're concerned about the safety of the people in the house and looking through the curtains no this is about a criminal investigation an investigation where a suspicion of manufacture of a controlled substance like methamphetamine would that be a search it would depend on this the fact using a flashlight through that opening your honor it would it depends on the facts of if the curtain is open if it's open like a small inch the curtains the curtains drawn but there's enough to see through by looking at a position on the side um then unless they have a justifiable reason to be where they're standing it all comes down to are they justified to be where they're standing if they aren't none of this flashlight talk matters that's i'm not taking umbrage with the use of the flashlight it all comes down to is does the officer have a legal reason to be there i don't know if i have enough information based on what you said to make that determination but it would ultimately come down to whether or not the officer is legally where he's at looking through that window so any questions no sir thank you we will take the case under advisement it's been a very interesting oral argument thank you thank you mr marshall will you please close out the case yes your honor thank you your honors thank you